ANNE JOHNSTONE, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 30750.)

Court of Claims, October 31, 1952.

*James T. Sandoro* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Lawrence H. Wagner* of counsel), for defendant.

LAMBIASE, J. Claimant was injured on Sunday, January 28, 1951, while attending Mass in Andrews Hall, an auditorium located on the grounds of the Buffalo State Hospital, an institution owned, maintained, and operated by the State of New York, to which auditorium she had gone solely and exclusively for that purpose, when a female patient of said institution, also attending Mass that day, suddenly threw herself upon claimant as the latter knelt in prayer causing claimant to sustain injuries for which she has filed this claim.

Claimant was employed as a cleaning woman at said hospital, her work week consisting of six days. She was off duty on Sundays. She was furnished room and board at the institution for which she paid the State of New York. It had been claimant's custom to attend Mass in said hall approximately twice a month.

Upon the record we conclude that claimant's injuries did not arise in the course of her employment, and that her remedy, if any, with reference thereto is not accordingly under the Workmen's Compensation Law of the State of New York, but rather by common-law action against the State of New York. The question presented, therefore, is, what is the proper measure of the duty or care of the State of New York to the claimant under the circumstances herein?

All nontrespassing visitors upon the lands of another, for the purpose of determining the relative duties of the occupant towards them, are classified either as gratuitous licensees or business visitors. (Restatement, Torts, §§ 331, 332; *Haefeli* v. *Woodrich Eng. Co.*, 255 N. Y. 442.) While claimant's coming on to the State's lands was as an employee and consequently as a " business visitor " (§ 332, *supra,* comment: a. and g.), the relation between her and the State of New York was not that as she attended Mass in said hall on Sundays, her day off, and particularly on Sunday, January 28, 1951. As she thus attended Mass the relation between her and the State of New York was that created by the gratuitous permission by the State of New York, implied through its passive acquiescence, that claimant might, until otherwise notified, continue in her practice, exclusively for her own benefit and convenience. (*Heskell* v. *Auburn Light, Heat & Power Co.*, 209 N. Y. 86.)

While it is true that it had been claimant's custom prior to January 28, 1951, to attend Mass in said hall approximately twice a month, she did not make such use of said hall through any inducement or allurement put forth by the State of New York. Long-continued acquiescence by the State of New York in such practice did not become an invitation. The law does not so penalize good nature or indifference, nor does permission ripen into right. (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79.)

The facts established that the relation between claimant and the State of New York when she was in Andrews Hall attending Mass on Sundays, her day off, was that of a gratuitous licensee. Her status being such, she was subject to all concomitant conditions and perils, and the sole duty of the State of New York toward her was abstention from inflicting intentional or wanton or willful injury. With that conception in mind of the duty of the State of New York toward claimant, we are constrained to the conclusion that there is nothing in the evidence which would warrant a finding that claimant's injuries were due to any breach of that duty toward her on the part of the State of New York, its officers and employees. In view of the foregoing discussion we deem it unnecessary to discuss the question of claimant's alleged contributory negligence.

The claim of the claimant, therefore, must be dismissed; and in our accompanying decision we have dismissed the same upon the merits.